[State Court Docket Filing Stamp]

COMMONWEALTH OF PUERTO RICO
GENERAL COURT OF JUSTICE
COURT OF FIRST INSTANCE
SUPERIOR PART OF AGUADILLA

| | |
|---|---|
| FIDEL ALBERTO SANTIAGO VALENTIN, VICTOR ARTURO PÉREZ PÉREZ<br><br>Plaintiffs<br><br>v.<br><br>APS HEALTHCARE PUERTO RICO, INC., APS CLINICS OF PUERTO RICO, INC., LUTGARDO ACEVEDO-LOPEZ<br><br>Defendants | RE: DAMAGES; REQUEST FOR WRIT OF MANDATE |

## COMPLAINT

**TO THE HONORABLE COURT:**

Come now Plaintiffs, Mr. Fidel Alberto Santiago Valentin and Mr. Victor Arturo Pérez Pérez (hereinafter "Plaintiffs"), through the undersigned legal representation, and request permanent injunctive and other relief under 42 U.S.C. § 12188 due to the failure of APS Healthcare Puerto Rico, Inc. (registration 104885), APS Clinics of Puerto Rico, Inc. (registration 126550) and Lutgardo Acevedo Lopez (hereinafter "Defendants") with the provisions of Title III of the federal law known as the American with Disabilities Act, 42 U.S.C. § 12181 et seq. and the regulations implementing 28 C.F.R. Part 36. (hereinafter we refer to the federal statute and its regulations as the "ADA" or "ADA Act"),[1] compensatory                    damages                    and                    other

---

[1] Title III of the ADA obligates all private entities and commercial facilities that provide services to the public. The obligation imposed by Title III is not to discriminate when offering such services to persons with disabilities in the equal and full enjoyment of goods, services and facilities, privileges, advantages or accommodations in any place of public accommodation. The official U.S. government link with information on Title II/III of the ADA is: http://www.ada.gov/

[State Court Docket Filing Stamp]

remedies under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and compensatory damages under Sec. 1802 of the Puerto Rico Civil Code.

**THE PLACE OF PUBLIC ACCOMMODATION IN QUESTION**

1.      This is an action that seeks to remedy the illegal discrimination that occurs in APS mental health clinics in Puerto Rico. These clinics are places of public accommodation[2] where mental health services are provided. The clinics are operated by APS Healthcare Puerto Rico, Inc. and APS Clinics of Puerto Rico, Inc. doing business as "APS Clinic," "APS Healthcare," "APS Clinics" and "Clinica APS" at the following locations:

APS Healthcare (Arecibo APS Clinic).
#108 José de Diego Avenue
Arecibo, Puerto Rico

APS Healthcare (Bayamón APS Clinic)
Plaza Tropical Rd. 167, Forest Hills
Bayamón, Puerto Rico

APS Healthcare (Aguadilla APS Clinic)
Plaza del Mar Rd. 107 KM 2.3
Aguadilla, Puerto Rico

APS Healthcare (Carolina APS Clinic)
Carolina Shopping Court PR #3 Km. 9.6
Carolina, Puerto Rico

---

[2] The term "public accommodation" or place of public accommodation, 42 U.S.C. 12181(7), is defined as private entities whose operations affect commerce and specifically mention the following as private entities whose operations affect commerce and the following places are specifically mentioned as examples of what a place of public accommodation is: hotels, motels, inns, restaurants, bars, other establishments serving food or beverages, cinemas, theaters, concert and performance halls, stadiums, places for exhibitions or entertainment, auditoriums, convention centers, performance halls, places of congregation, bakeries, grocery stores, clothing stores, tool stores, shopping malls, other sales or rental establishments, laundromats, dry-cleaning places, banks, barbershops, beauty salons, travel agencies, shoe repair services, funeral homes, gasoline stations, accountants' or lawyers' offices, pharmacies, insurance offices, health care professionals' offices, hospitals, other service establishments, a terminal or station used for public transportation, museums, bookstores, galleries, other places where there are public exhibits or collections, parks, zoos, amusement parks and other places of recreation, child care centers, elementary schools, high schools, colleges, universities, or private post-graduate schools or any other place where education is provided, child care centers, senior care centers, homeless shelters, food pantries, adoption agencies, or any other establishments where social services are provided, gymnasiums, health spas, bowling alleys, golf courses and other places of exercise and recreation. https://www.law.cornell.edu/uscode/text/42/12181

[State Court Docket Filing Stamp]

APS Healthcare (Caguas APS Clinic)
Angora Building Gautier Benitez Ave., Villas #162
Caguas, Puerto Rico

APS Healthcare (Cidra APS Clinic)
Berrios Shopping Center Rd. 172, Ramal 787 Barrio Bayamón
Cidra, Puerto Rico

APS Healthcare (Humacao APS Clinic)
Plaza Mall Humacao Rd. #3, Km. 82 Bo. Rio Abajo
Humacao, Puerto Rico

APS Healthcare (Guayama APS Clinic)
Highway 3, Km. 135.1 Local 9-I-10
Guayama, Puerto Rico

APS Healthcare (Clinica APS de Mayagüez)

APS Healthcare (Manatí APS Clinic)
CDT Cesar Rosa Febles, Annex Building, Floor 2 SR 2, Km 50.
Floor 2 SR 2, Km 50
Manatí, Puerto Rico

APS Healthcare (Moca APS Clinic)
Moca Professional Plaza PR111 Int PR 110 Km 14.5
Moca, Puerto Rico

APS Healthcare (Naranjito APS Clinic)
Mercado Plaza PR 152 Km 14.6 Bo Cedro Abajo
Naranjito, Puerto Rico

APS Healthcare (Orocovis APS Clinic)
Rt. 155 km. 30.8 Bo Gato, Orocovis, Puerto Rico

APS Healthcare (APS Ponce Clinic)
8118 Concordia St., Ponce, Puerto Rico

APS Healthcare (APS San Juan Clinic)
VIG Tower Building 1st Floor Ave. Ponce de León #1225
Santurce, Puerto Rico

APS Healthcare (APS Toa Baja Clinic)
Rt. 867, Km 2.2
Bo. Sabana Seca
Toa Baja, Puerto Rico

APS Healthcare (APS Clinic of Yauco)
Centro Profesional del Sur Highway 121, Km. 13.3
Sector Cuatro Calles
Yauco, Puerto Rico

[State Court Docket Filing Stamp]

(hereinafter, we will refer to these places as "the Property," "the clinic," "the clinic" [sic]

or the "place of public accommodation").

## NECESSITY OF THE ACTION

2.     This Complaint for permanent injunction is necessary because of the following:

a)  Defendants did not and do not seek the removal of barriers to communication

with the deaf community;

b)  Defendants maintain in the place of public accommodation communication

barriers in violation of the ADA and U.S. Department of Justice regulations.

c)  Plaintiffs are a deaf person who visited the place of public accommodation and

personally encountered communication barriers there.

d)  Plaintiffs are (i) at imminent risk of encountering communication barriers or

(ii) it would be futile to return to the place of public accommodation at this

time as it would constitute a risk to Plaintiffs' personal safety or would be

tantamount to subjecting Plaintiffs to an unpleasant, humiliating and

discriminatory condition or situation;

e)  Plaintiffs have the present intention of enjoying the goods, privileges, services

that are available at the place of public accommodation once the

communication barriers are fully removed. However, Plaintiffs reserve the

right to return to the place of public accommodation at any time before the

communication barriers are removed, even if it means subjecting themselves

to dangerous or discriminatory conditions, for the purpose of seeking,

identifying and reporting discrimination or any other bona fide purpose.

## THE PLAINTIFFS

3.     Mr. Fidel Alberto Santiago Valentin is a person who is profoundly deaf since

[State Court Docket Filing Stamp]

birth and uses sign language (ASL) to communicate. His mailing address is: PO BOX 2126 Bo. Voladoras, Moca, PR 00676. His physical address is: Carr. 420 Km. 2.7 Bo. Voladoras, Moca PR 00679. His telephone number is (787) 981-9300 and (787) 560-3595 (text messages). His fax number is: he does not have. Mr. Fidel Alberto Santiago Valentín is part of the deaf community of Puerto Rico. The phrase "deaf community" used herein is a reference to the deaf community of Puerto Rico as a whole and, in addition, a specific reference to Mr. Fidel Alberto Santiago Valentín, Plaintiff. No reference to the deaf community should be construed as one that excludes Plaintiff.

4.      Mr. Victor Arturo Pérez Pérez is a person who is profoundly deaf since birth and uses sign language (ASL) to communicate. His mailing address is: PO BOX 1000 Bo. Voladoras, Moca, PR 00676. His physical address is: Carr. 420 Km. 2.1 Bo. Voladoras, Moca PR 00679. Its telephone number is (787) 218-2233. His fax number is: he does not have. Mr. Victor Arturo Pérez Pérez is part of the deaf community of Puerto Rico. The phrase "deaf community" used herein is a reference to the deaf community of Puerto Rico as a whole and, in addition, a specific reference to Victor Arturo Pérez Pérez Pérez, Plaintiffs. No reference to the deaf community should be construed as one excluding Plaintiff.

**DEFENDANTS**

5.      Defendants are composed of the following natural persons or legal entities: APS Healthcare Puerto Rico, Inc. and APS Clinics of Puerto Rico, Inc. legal entities that are owners, lessors, lessees or operators of the clinics identified in the first paragraph of this Complaint.

6.      Defendants is also composed Lutgardo Acevedo López, who is the owner or lessor of the APS clinic identified in the first paragraph of this Complaint, which is located in Moca,            Puerto            Rico,            at            coordinates

[State Court Docket Filing Stamp]

(18.395755709468816, -67.10836164320027), Cadastre: 070-023-484-04-000 and Parcel: 070-023-484-04.

7.     Also a party to this Complaint are certain persons now identified as John Doe 1-100, who are individuals or corporations who are owners, lessors, lessees and operators of the clinics identified in the first paragraph of this Complaint. Since the identity of these persons is unknown at this time, the Complaint will be amended to join them in this civil proceeding. In this Complaint, the term "Defendants" includes all persons named in the caption, as well as all unknown defendants identified by the fictitious name "John Doe 1-100".

## JURISDICTION AND VENUE

8.     If this civil proceeding is removed to the United States District Court, subject matter jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 (a)(3) and (a)(4).

9.     The trial court has original jurisdiction to adjudicate disputes arising under federal or state law.

10.     This civil action has been filed in the judicial forum that has jurisdiction because one of the locations in controversy, the APS clinic in Moca, is located in this judicial region and because a substantial part of the events that impacted the Plaintiffs occurred at the APS clinic in Moca. However, as detailed below, there are APS clinics throughout Puerto Rico, and the operation of such clinics is at issue.

## GENERAL ALLEGATIONS AND PLEADINGS RELATING TO DEFENDANT'S PROCEDURES, POLICIES AND PRACTICES

11.     For the Deaf community that relies on sign language as a primary method of communication, the use of a qualified sign language interpreter is necessary to ensure effective        communication        between        the        Deaf        community        and

[State Court Docket Filing Stamp]

persons who do not use sign language to communicate.

12.    In the context of medical, psychological and psychiatric services, such as those available at APS clinics in Puerto Rico, a sign interpreter is necessary because *American Sign Language* ("ASL") is a complete, independent and complex language using hand signs and other movements, including facial expressions and body postures.

13.    ASL is a language different from Spanish or English. It is not Spanish or English using hands. ASL has its own vocabulary and its own rules of grammar and syntax.

14.    Writing in Spanish or English does not usually equate to effective communication with a deaf person. English or Spanish is generally considered a foreign language for those who are deaf before they acquire a language. ASL is Plaintiffs' vernacular language.

15.    Although deaf people may learn Spanish or English as a secondary language later in life, they usually learn it after the critical developmental period of language acquisition. Therefore, their ability to read or write English or Spanish is generally much lower than that of hearing people. This is particularly true for deaf people who have not had access to adequate public or private education that meets their needs.

16.    Lip-reading often does not allow effective communication for a deaf person. Lip reading is often much less effective than written communication. This is particularly true in times of pandemic, as a mask is often used. However, outside of pandemic times, it is also extremely difficult to lip read in English or Spanish because only a small number of sounds used in speech are clearly visible in the mouth and many sounds are visibly identical on                                                                    the

[State Court Docket Filing Stamp]

lips. In addition to these lip-reading difficulties, the ability to accurately read lips is affected by the speaker's facial bone structure, as well as facial hair and facial features. speaker, as well as facial hair, lighting and other external factors. Even if a person communicating in ASL can identify the sounds that appear to come from the speaker's lips, for the reasons explained above, the deaf person will not necessarily understand what is being said in English or Spanish or the vocabulary being used. Therefore, providing a qualified ASL interpreter as an auxiliary service is necessary for communication with deaf people can occur.

17.    Plaintiffs have filed this civil action after having determined that there is reasonable cause to believe that the place of public accommodation maintains a pattern of systematic discrimination against the Deaf community. The discrimination consists of not making interpreters available to the Deaf community seeking mental health services at APS clinics in Puerto Rico.

18.    Deaf ASL communicators visiting PHC clinics in Puerto Rico need ASL interpreters to communicate effectively.

19.    Defendants fail in their duty to provide effective communication when it comes to more complicated and interactive communications, such as those mentioned below:

i.     Discussing a patient's symptoms and psychological or psychiatric condition, medications, and medical history;

ii.    Explaining and describing medical or psychological conditions, tests, treatment options, medications, surgery, and other procedures;

iii.   Providing a diagnosis, prognosis and recommendation for treatment;

iv.    Obtaining informed consent for treatment;

v.     Communicating with a patient during psychological or psychiatric treatment;

[State Court Docket Filing Stamp]

vi.   Providing instructions about medications, post-treatment activities, and follow-up treatments;

vii.  Providing mental health services, including group or individual therapy, patient and family counseling, addiction counseling, buprenorphine treatment, general medicine, nurse practitioner, medication therapy, social work services, and partial hospitalization outpatient setting (called in commercially "MindSpa")

viii. Discussing complex billing or insurance issues

ix.   During presentations, seminars or educational talks, either in person or via public videos on social media, there are no interpreters or alternatives to make them accessible to the deaf community. As for online videos, many do not provide captioning or ASL interpretation to make them available to the Deaf community. As an example, on July 12, 2019, APS posted a 52-second video titled "What is healthy self-esteem?" where Health Educator Jahleel Baez describes what self-esteem is, suggests how one should react to negative comments, and describes the concept       of       healthy       self-esteem.       See https://www.facebook.com/192105680817120/videos/3978210577589

53. [sic]  However, this video is not accessible to the deaf community because it is not accompanied by adequate subtitles or interpretation.

20.   Defendants breach their duty to make effective communication available to the Deaf community, which is particularly critical in mental health service settings where lack of       communication       can       lead       to       misdiagnosis       and

Certified Translation MC-2021-034
Page 10 of 22

[State Court Docket Filing Stamp]

inappropriate or delayed medical treatment.

21.    Defendants breach their duty to provide effective means of communication for patients, family members and hospital visitors who are deaf.

22.    Defendants breach their duty to provide effective communication to the deaf community in places in which patients, their families, companions or members of the public interact with PHC staff. This includes all of the programs and services mentioned in previous paragraphs.

23.    Defendants breach their duty to provide an interpreter or other assistive service in situations where it is a family member or companion rather than the deaf or hard of hearing patient. For example, interpreter services are not made available to receive treatment, discuss medical prognosis and treatment options with the deaf patient.

24.    Defendants breach their duty to consult with each deaf individual to determine what aids or services are necessary to provide effective communication in the context of mental health services.

25.    Defendants breach their duty to make qualified ASL or sign language interpreters available. An interpreter is qualified if he or she can interpret competently, accurately and impartially. In the medical-hospital or mental health context, an interpreter must be familiar with specialized vocabulary and must be able to interpret medical terms and concepts.

26.    It is customary for Defendants to ask family members and companions from the deaf    community    to    serve    as    interpreters    or    communication

[State Court Docket Filing Stamp]

intermediaries. Often, family members do not have the skills to be interpreters due to, for example, the specialized vocabulary used in the medical-hospital context or to accurately interpret the emotional situation that often exists in a medical situation. In addition, when family members or companions of the deaf person are used as interpreters or intermediaries, there is often an erosion of the patient's privacy. Often, such an erosion of privacy also constitutes a violation of federal legislation protecting patient privacy.

27.     Defendants breach their duty to make arrangements to ensure that qualified interpreters are available on a scheduled and unscheduled basis with minimal delay. Defendants could also choose to have interpreters on staff, but fails to do so.

28.     Defendants actively discourage the Deaf community from accessing interpreters in the following ways: (i) rejecting requests for interpreters from the deaf or their family members or companions; (ii) asking the deaf, companions and family members to serve as interpreters; (iii) ignoring requests for interpreters; (iv) unilaterally proceeding to provide services without the informed consent of the deaf patient; (v) asserting that neither health insurance nor *Medicaid* covers interpreter services for the deaf patient.[3]

29.     Defendants     has     failed     in     its     duty     to     establish     protocols     and

---

[3] Although it is true that insurance does not cover interpreter services, it is misleading to state that health insurance does not cover interpreter services because it conveys the misleading impression that the patient is responsible for paying for interpreter services. Health care providers may not charge patients or other hearing-impaired individuals a fee for interpreter services or other communication aids and services.

[State Court Docket Filing Stamp]

provide training to ensure that staff know how to obtain interpreter services and other communication aids and services when needed by deaf and hard of hearing individuals.

30.   Defendants have failed to have signs, posters or other notices to advise deaf persons that the services and assistance required by law are available and what they must do to obtain such assistance. If there are any signs, they are not in a visible location or where patients or visitors typically look for information. Nor does the website (https://apshealth.com/)   (https://www.facebook.com/apspuertorico/)   or   printed information materials provide information on the availability of interpreters.

31.   Defendants are in breach of their duty to provide visual alarms in all public and common use areas, including restrooms, where audible alarms are provided.

32.   Defendants breach their duty to have a TTY-equipped telephone in waiting rooms.

33.   Defendants breach their duty to have a percentage of pay phones with accessible features, such as TTY connection capability, volume controls, and hearing aid compatibility. ADAAG Standards, §§ 4.1.3 (17), 4.31.

34.   Defendants are in breach of their duty to have emergency clinic evacuation procedures that include specific measures to ensure the safety of deaf and hard of hearing patients and visitors.

35.   Defendants is in breach of their obligations to the deaf community, even though providing   communication   aids   or   services   would   not

[State Court Docket Filing Stamp]

fundamentally alter the nature of the goods or services offered. Nor would providing communication aids or services result in an undue burden on the Defendants.

36.     Defendants knew or should have known that the deaf community needs interpreters to receive medical services.

37.     Defendants do not have a designated person to provide, monitor and supervise compliance with their legal obligations related to the deaf community.

**ALLEGATIONS RELATED TO
PLAINTIFF'S EXPERIENCES**

38.     Plaintiffs are residents of Puerto Rico and live near the Property.

39.     Plaintiffs have visited the Moca APS clinic, and are a current patient of said institution, and encountered communication barriers that interfered with Plaintiffs' ability to use and enjoy the goods, services, privileges and accommodations offered at the Moca APS clinic.

40.     Defendants knew that Plaintiffs are a member of the deaf community. Defendants knew that auxiliary services were necessary to communicate with Plaintiffs. In the case of Mr. Victor Arturo Pérez Pérez, he is a regular patient at the APS clinic located in Moca, but is always forced to bring one of his sisters to serve as an interpreter, because he is not provided with an interpreter or any other means of effective and confidential communication. His sisters are not qualified interpreters and are not qualified interpreters and are forced to serve as interpreters to avoid being denied mental health services altogether. Mr. Fidel Alberto Santiago Valentin visits with the APS clinic, but often attends his appointments alone and does not have access to an interpreter or any means of effective communication when receiving mental health services at the APS clinic located in Moca.

[State Court Docket Filing Stamp]

41.     Plaintiffs' experience mentioned in the preceding paragraph was not an isolated event on a particular date. Plaintiffs' experience is representative of all their experiences at the APS clinics. That is, they have never been provided with an interpreter or any method of effective communication. These experiences of Plaintiffs are representative of the hardship experienced by the deaf community seeking mental health services at APS clinics in Puerto Rico as a result of Defendants' policies, practices and procedures.

42.     Defendants' policies, practices and procedures have been systematic and continuous for many years. Defendants have never in their existence had a total (or substantial) level of compliance with its legal obligations to the deaf community. On the contrary, APS clinics consistently and uniformly fail to establish effective communication with the Deaf community throughout Puerto Rico.

43.     Plaintiffs have been the victim of uniform policies, practices and procedures that affected and affect the Plaintiffs and the Deaf community.

44.     Defendants' practices and procedures existing at the time Plaintiffs have received mental health services at the APS clinics, and at the present time, represent a very high level of noncompliance with the Defendants' legal obligations.

45.     Defendants maintain a thoughtful and conscientious policy of ignoring their legal obligations to the deaf community. By way of example, the Defendants have chosen not to establish protocols to comply with the rights of the deaf community, have failed to train staff, and have been unwilling to invest time or money in complying with their statutory obligations. Defendants have actively discouraged deaf patients from requesting qualified interpreters.

[State Court Docket Filing Stamp]

46.     Existing policies, practices and procedures at APS clinics are motivated by disparagement and dehumanization of the culture and language of the Deaf community. Conduct that is intentional and motivated by discriminatory animus that has caused serious harm to the Deaf community.

**FIRST CAUSE OF ACTION:
AMERICANS WITH DISABILITIES ACT OF 1990**

47.     Plaintiffs have a "disability" as defined by the ADA. 42 U.S.C. § 12102(1)(A), in that they are deaf persons.

48.     The Property is a place of public accommodation ("public accommodation") as defined by the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. 12181(7)(F) and its regulations, 28 C.F.R. § 36.104, as it is in the category of hospital, professional offices or health care providers. The Property is not residential, is not a private club, and is not a church.

49.     The ADA prohibits places of public accommodation, including hospitals, from discriminating on the basis of disability in the full and equal enjoyment of their goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182 (a); 28 C.F.R. § 36.201 (a). Discrimination includes failing to take reasonable steps to ensure that no person with a disability is excluded, denied services, segregated, or treated differently from any other person because of the absence of auxiliary aids and services. 42 U.S.C. § 12182 (b) (2) (2) (A) (ii); 28 C.F.R. $ 36.303.

50.     Defendants have failed to comply with their obligations because they did not, and do not, provide Plaintiffs with a qualified interpreter necessary for effective communication on all occasions when Plaintiffs has received mental health services. In addition, Defendants placed Plaintiffs' companions and family members in a position where they felt obligated to provide interpretation services or serve as

[State Court Docket Filing Stamp]

intermediaries, which was inappropriate and placed the family members and companions in a position they should not have been in.

51.     As a result of the experiences described in this Complaint, Plaintiffs suffered emotional harm.

52.     As a result of the experiences described in this Complaint, Plaintiffs suffered economic damages. Economic damages are the unnecessary prolongation of appointments for health care services, compensation and allowances for companions, the expense of medications and deductibles that were not really necessary. Because there has been no effective communication on billing issues, it is believed that there may be economic damages due to billing for services that were not actually rendered, as there was no communication with the claimant.

53.     Defendants showed deliberate indifference to Plaintiff's rights. Defendants knew that Plaintiffs had requested auxiliary services for effective communication, dismissed and rejected their requests without making any effort to determine whether it was possible to provide the requested accommodation and rejected multiple requests for accommodations on multiple occasions and for an extended period of time, and at no time was interpreter services or any form of effective communication provided.

54.     It is for the foregoing reasons that Defendants denied Plaintiffs auxiliary aids and services necessary for effective communication in violation of 42 U.S.C. § 12182 (b) (2) (2) (A) (iii) and 28 C.F.R. § 36.303. Defendants also engaged in conduct constituting associational discrimination against Victor Arturo Pérez Pérez's family members and companions by placing them in a position, on numerous occasions, and at the present time, of choosing between serving as a medical interpreter for him or allowing Mr. Pérez Pérez Pérez to have difficulty communicating with the medical provider. See 42 U.S.C.

[State Court Docket Filing Stamp]

Section 12182 (b) (1) (E).

55.     Defendants' policies, procedures, and practices described in this Complaint are continuous and in effect at the time this civil action is filed.

56.     As a result of Defendants' actions and omissions, Plaintiffs suffered and continues to suffer humiliation, anguish, and impairment of their personal dignity and right to live free from discrimination or interference with their legal rights.

57.     Plaintiffs are entitled to injunctive relief and damages in an amount to be determined at trial. Each plaintiff's damages are not expected to exceed $250,000. Each plaintiff reserves the right to modify this amount before or during trial as the evidence may require.

58.     Plaintiffs are entitled to an order enjoining Defendants from continuing to discriminate against persons with disabilities by refusing to provide appropriate ASL interpreters and other auxiliary aids to deaf individuals, and an order requiring full compliance with Title III of the ADA, including that the emergency accessible communication equipment and items described in this Complaint be provided.

59.     Pursuant to 42 U.S.C. §§ 12205, Plaintiffs are entitled to its attorney's fees, litigation expenses, costs, and expert witness expenses.

**SECOND CAUSE OF ACTION
REHABILITATION ACT OF 1973**

60.     All preceding paragraphs are incorporated herein.

61.     Section 504 provides: "No otherwise qualified individual with a disability the United States... shall, solely by reason of their or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination

[State Court Docket Filing Stamp]

under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).

62.     Plaintiffs are Section 504 protected persons because they are substantially limited in their ability to hear and speak.

63.     Plaintiffs are a person eligible to receive the benefits and services made available to the public on the Property.

64.     During the past year, and as of the present, Defendants and the Property received federal funds as part of its programs and activities.

65.     Defendants' conduct described in this Complaint violated Plaintiffs' rights under the Rehabilitation Act by excluding Plaintiffs or denying Plaintiffs benefits solely on the basis of their disability.

66.     Defendants' conduct showed deliberate indifference to Plaintiffs' rights because Defendants knew that auxiliary aids to communication were requested, disregarded requests for accommodations without making an effort to determine whether the requests could be accommodated, and failed to provide an appropriate auxiliary aid or a qualified interpreter.

67.     Plaintiffs suffered emotional distress and damages due to the Defendants' violation of the Rehabilitation Act.

68.     Pursuant to Section 505 of the Rehabilitation Act, Plaintiffs are entitled to an award of damages, costs, litigation expenses and attorney's fees.

### THIRD CAUSE OF ACTION
### DAMAGES - PUERTO RICO CIVIL CODE

69.     All preceding paragraphs are incorporated.

70.     Article 1536 of the new Civil Code of Puerto Rico, which became effective on November 28, 2020, establishes that the person who by fault or negligence

[State Court Docket Filing Stamp]

causes damage to another, is obligated to repair it. Article 1802 of the previous Civil Code established that the person who by his action or omission causes damage to another, whether by fault or negligence, shall be obligated to repair the damage caused.

71.     Plaintiffs have received mental health services within one year prior to the filing of this Complaint. Those mental health services at APS Clinics have been provided by Co-Defendants APS Healthcare Puerto Rico, Inc. (Registration 104885) and Co-Defendants APS Clinics of Puerto Rico, Inc. (registration 126550), as well as Co-Defendantss John Does 1-100.

72.     As described in the preceding paragraphs, Defendants has acted culpably or negligently in providing mental health services without effective communication and in a manner inconsistent with federal law, which has caused damages to Plaintiffs.

73.     By providing mental health services without effective communication with the patient, Defendants engaged in professional malpractice.

74.     Plaintiffs suffered emotional distress and damages due to the Defendants' conduct during years of service. The mental harm is the sense of discrimination generated by the situation where Plaintiffs have never had equal access to mental health services, as described in previous paragraphs. In addition, as a result of ineffective communication, the situations for which Plaintiff went to the PHC clinics for mental health services were not adequately mitigated by reason of ineffective medical treatment. In other words, there has not been sufficient improvement as a result of the lack of effective communication. Furthermore, in the case of Mr. Victor Arturo Pérez Pérez, he has suffered harm because he has been forced to share personal and intimate information with family members and companions, as described in previous paragraphs.

75.

[State Court Docket Filing Stamp]

## LEGAL REMEDIES REQUESTED

**IN WITNESS WHEREOF**, Plaintiffs most respectfully request the following legal remedies from the Honorable Court:

A.  That jurisdiction be accepted over this matter and that Defendants be found to have violated Title III of the ADA of 1990.

B.  Accept jurisdiction over this matter and declare that the Defendants violated the Rehabilitation Act of 1973.

C.  A permanent injunction pursuant to 42 USC § 12188 (a) (2) and 28 CFR § 36.504 (a) directing Defendants to take all necessary steps the court deems appropriate to protect Plaintiffs' statutory rights. Specifically, these potential remedies include, but are not limited to, an Order requiring Defendants to provide qualified sign language interpreters (ASL) and auxiliary aids at all of its APS clinics; for Defendants to establish policies, practices, and procedures to safeguard the rights of the deaf community; and the appointment and designation of a compliance monitor due to the magnitude of the violations and the serious historical noncompliance.

D.  In the event Defendants continue their discriminatory condition [sic], it is requested pursuant to 42 USC § 12188 (a) (2) and 28 CFR § 36.504 that all APS clinics be ordered to close and shut down to stop the discriminatory condition [sic] until such time as Defendants have credibly demonstrated to the satisfaction of the court that the discrimination has been eliminated;

E.  Economic and non-economic compensatory damages for Mr. Fidel Alberto Santiago Valentín for no less than $250,000 under the Rehabilitation Act and the Civil Code of Puerto Rico.

[State Court Docket Filing Stamp]

F.  Compensatory economic and non-economic damages for Mr. Victor Arturo Pérez Pérez Pérez for nt less than $250,000 under the Rehabilitation Act and the Civil Code of Puerto Rico.

G.  Attorney's fees, costs, litigation expenses, pursuant to 42 U.S.C. § 12205 and Section 505 of the Rehabilitation Act.

H.  The provision of any other remedy that is just and proper.

**RESPECTFULLY SUBMITTED.**

This 6th day of January, 2021.

Zuleika Castro De Jesus
Ms. Zuleika Castro De Jesus
RUA 21258
FL Bar No.: 1022294
D'Jesus Law Offices
1969 S. Alafaya Trail #379
Orlando, FL 32828-8732
zcastro@djesuslaw.com
T.: (407) 267-7130
Fax: N/A

s/José Carlos Vélez Colón
Mr. José C. Vélez Colon
RUA 18913
Velez Law Group LLC
Midtown Condominium
421 Muñoz Rivera Ave.
Penthouse #1009
San Juan, PR 00918-3115
jvelez@velezlawgroup.com
T.: (787) 599-9003
Fax: N/A

No. <u>2021-022</u>  TRANSLATOR'S CERTIFICATE OF ACCURACY

I, Mayra Cardona Durán, of legal age, single, resident of Guaynabo, Puerto Rico, Certified Interpreter of the United States Courts (Certification No. 98-020) and certified by the National Association of Judiciary Interpreters and Translators (10671), and admitted to the Puerto Rico Bar Association (Bar No. 12390, RUA No. 11038) hereby CERTIFY: that according to the best of my knowledge and abilities, the foregoing is a true and rendition into English of the original Spanish text, which I have translated and it is stamped and sealed as described therein.  This document is comprised of Twenty Two (22) Pages, including this certification page, and does not contain changes or erasures.

In Guaynabo, Puerto Rico today, Friday, February 12, 2021.


Lcda. Mayra Cardona
BA Lit/Fr, MA Trans, JD
United States Courts Certified Interpreter
NAJIT Certified Interpreter and Translator
3071 Alejandrino Ave. PMB 306 Guaynabo, Puerto Rico 00969-7035
Tel. (787) 530-1414
e-mail: mayra@cardona.com